IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 APR -3 PM 3: 21

U.S. DISTRICT COURT
N.D. OF ALABAMA

MARKEL INSURANCE COMPANY,        )
                                 )
     Plaintiff and Counter-      )
     Claim Defendant,            )        CIVIL ACTION NO.
                                 )
v.                               )        00-AR-2604-S
                                 )
THE DUNCAN COMPANY, INC., *et*   )
*al.*,                           )
                                 )
     Defendants and Counter-     )
     Claimants.                  )
                                 )
v.                               )
                                 )
TOM BOLE, *et al.*,              )
                                 )
     Third-Party Defendants.     )

ENTERED
APR - 3 2001



## MEMORANDUM OPINION

Before the court are a motion to dismiss counterclaim, a motion
for summary judgment, a motion to strike, and an application for
preliminary injunction.  All four requests are made by plaintiff,
Markel Insurance Company ("Markel").  Defendants, The Duncan
Company, Inc. ("DCI"), John R. Duncan d/b/a The Duncan Company ("The
Duncan Company"), John R. Duncan as an individual, and Carol O.
Duncan as an individual, have responded to Markel's four requests.
The other individual party in this action, Tom Bole ("Bole"), is one
of the three parties, in addition to Surety Associates and Tom Bole

d/b/a Surety Associates, named in defendants' third-party complaint. Bole has filed an answer to that third-party complaint and was deposed by defendants in preparation for responding to Markel's pending motions. Bole has not submitted any papers directly related to the pending requests.

On December 18, 2000, the court set Markel's application for preliminary injunction for hearing on January 11, 2001. On January 8, 2001, Markel moved for summary judgment and moved for dismissal of defendants' counterclaim, and on January 9, 2001, defendants filed an amended response in opposition to the preliminary injunction request. Because of the proximity of the date of the parties' filings and the hearing date, the court down-graded the hearing to a status conference. As a result of the conference, the court set a schedule that allowed defendants to depose Terry Cook ("Cook") and Bole prior to responding to Markel's pending requests and allowed Markel to reply to defendants' arguments regarding *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 119 S.Ct. 1961 (1999).

This controversy arises from defaults on construction projects which were undertaken by DCI or The Duncan Company and for which Markel issued performance and payment bonds. It is uncontroverted

2

that beginning in September of 1997 Markel issued various
performance and payment bonds on seven construction projects
undertaken by DCI or The Duncan Company and that either DCI or The
Duncan Company is the principal for each bond.  It is further
undisputed that on September 15, 1997, Markel, as the secured party,
and DCI and The Duncan Company, both signing as principal, executed
a General Agreement of Indemnity ("GAI"), with DCI, John Duncan, and
Carol Duncan signing as indemnitors.  Markel has filed
uncontradicted materials directly supporting the existence of
defaults on two of the projects.  For these two projects as well as
three others, the second affidavit of Carl C. Coe, Jr. ("Second Coe
Affidavit"), Markel's surety claims manager with primary
responsibility for the bonds at issue, sets forth for each of the
five projects the amount of Markel's damages as losses already
incurred, claims made against it by subcontractors or material
suppliers, and/or anticipated losses.  (The court will assume for
the purposes of this opinion that DCI or The Duncan Company has in
fact defaulted on three projects.)  The complaint includes a request
for preliminary injunction that in part asks the court to enjoin
transfer of defendants' assets and to order an accounting,
marshaling, sequestering, and deposit of assets "sufficient to
secure Markel from its losses and anticipated losses."

3

The crux of defendants' response is that their defaults were occasioned by the unlawful acts or omissions of Cook, at the time Markel's regional manager, and Bole, who was DCI's and The Duncan Company's bonding agent during the time period relevant to this dispute.  Defendants allege, by way of counterclaim and affirmative defenses, that, through Cook, Markel suppressed material facts and breached its fiduciary duty.  They also counterclaim that Markel, through Cook, conspired with Bole.  By way of third-party complaint, defendants allege that Bole is liable for suppression, breach of contract, breach of fiduciary duty, fraud, and civil conspiracy. Thus, defendants do not so much dispute the facts on which Markel relies as they seek to expand the universe of facts relevant to a final determination of obligations between the parties.  Among these additional facts, as given by defendants, are that DCI and The Duncan Company selected Bole as bonding agent upon Cook's request, that John Duncan created an advisory board for The Duncan Company consisting of three individuals, including Cook, on which The Duncan Company relied, and that Cook knew of Bole's impending resignation as bonding agent for DCI and The Duncan Company but did not inform The Duncan Company of that fact.  Defendants' story also includes the facts that they had no indication that Bole would resign, that his stated reasons for doing so are not supported in fact, that he

4

recommended no replacement bonding agent, and that the resignation resulted in a downward spiral that ended with the defaults. Defendants essentially contend that these facts show 1) that the relationship between DCI/The Duncan Company and Markel should be characterized as other than strictly one of defaulting principal and surety, 2) that, so characterized, this relationship gives rise to legal obligations on the part of Markel, and 3) that Markel did not meet its obligations, resulting in liability to defendants rather than the other way around.

## Markel's motion to dismiss counterclaim

The thrust of Markel's Fed.R.Civ.P. 12(b)(6) argument is that the relationship between Markel and DCI/The Duncan Company, as facially shown, does not give rise to the duties which defendants assert Markel failed to meet.  Regarding the suppression count, Markel contends that defendants have failed to state a claim on which relief can be granted because a duty to disclose does not exist between a principal and its surety.  However, under Alabama statutory and case law a duty to disclose may arise from the particular circumstances of the case as well as from a recognized confidential relationship.  *See* Ala. Code § 6-5-102; *State Farm Fire & Cas. Co. v. Owen*, 729 So.2d 834, 837 (Ala. 1998).  Defendants base

5

Markel's duty to disclose on the "particular circumstances" ground
and plead facts that could establish the existence of such requisite
circumstances under the six-factored test used by Alabama courts.
On defendants' count for breach of fiduciary duty, Markel asserts
that no such duty exists between it, as surety, and DCI or The
Duncan Company, as principal.   Again, the count passes 12(b)(6)
muster because defendants plead that facts outside the strict
surety-principal relationship created Markel's fiduciary duty.
These alleged facts could support a finding that Cook was a *de facto*
director of The Duncan Company under *Deal v. Johnson*, 362 So.2d 214,
218-19 (Ala. 1978), and, as such, that he owed The Duncan Company
a fiduciary duty, the violation of which can be imputed to his then-
employer, Markel.   Finally, as to the third count, civil conspiracy,
with the element of concerted action supported by pled facts,
because the underlying counts do state a claim on which relief can
be granted, so, too, does the count of civil conspiracy.   Because
defendants' counts of suppression, breach of fiduciary duty, and
civil conspiracy state claims on which relief may be granted,
Markel's motion to dismiss is due to be denied.

6

## <u>Markel's motion for summary judgment and motion to strike Sherar</u>
### <u>affidavit</u>

Relying chiefly on its surety-principal relationship with DCI and The Duncan Company, the terms of the GAI, and the Second Coe Affidavit, Markel seeks "entry of judgment in its favor as to all legal and equitable claims asserted in this matter." It also seeks in two ways to undercut defendants' grounds for the alleged suppression and breach of fiduciary duty, grounds presented as counts in the counterclaim and as affirmative defenses in the answer, which also includes the affirmative defense of offset. First, Markel accurately cites Cook's statement in his deposition that he was not on the advisory board. However, defendants accurately cite to the same deposition for the contradictory statement: that Cook was on the board. Further, defendants' assertion that Cook was on the board is supported to some degree by an evaluation form, a copy of which has been submitted by defendants, that he completed on a candidate for the Executive Vice-President/CFO position in The Duncan Company. This is not to say that defendants have proven as a matter of undisputed fact their assertion on this issue. It is to say, however, that they have created a dispute as to a material fact on both suppression and breach of fiduciary duty that cannot be decided at the summary

7

judgment stage.

Second, Markel moves to strike the affidavit of J. William Sherar. Defendants acknowledge that Bole and Cook deny that Bole told Cook that he was going to resign, but argue that Sherar's affidavit creates a dispute as to whether Cook knew of Bole's resignation before it happened. Sherar states, based on the facts gleaned from portions of the record of this case, primarily John Duncan's affidavit, and his own thirty years of experience in the bonding industry, that it is his opinion "that Tom Bole as the bonding agent had to have made Markel aware of his decision to resign as Duncan's bonding agent prior to March 1, 1999. The normal custom and bonding business practices are such that no bonding agent would withdraw without informing the bonding company prior to taking such action and usually suggesting a replacement bonding agent to work with the assured." His reasoning for that conclusion is, in part, that notification of the surety "allows [it] to monitor what may be happening with the construction company and assess its exposure under the bonds that have been issued." In its motion to strike, Markel states that Sherar's opinions are not based his personal knowledge, that his information is primarily based on John Duncan's affidavit, and that it otherwise fails to meet Fed.R.Civ.P. 56(e). However, it is clear that Sherar is an expert witness, not

8

a fact witness.  In providing an expert opinion on the customs and practices of the bonding industry, Sherar's affidavit meets Rule 56(e) requirements, especially when there has been no *Daubert* hearing and none requested.  Therefore, Markel's motion to strike is due to be denied.  Because any determination of damages suffered by Markel would not be a dispositive accounting of the liabilities between Markel and defendants without a proper determination of the merits of the grounds for suppression and breach of fiduciary duty, and because such a determination cannot be made at this stage of the proceedings, Markel's summary judgment motion is due to be denied.

### Markel's application for preliminary injunction

The Eleventh Circuit has not spoken on the issue of whether *Grupo Mexicano*'s prohibition on the exercise of the equitable power of issuing a preliminary injunction is limited to cases where a plaintiff brings an action solely "at law" as distinct from "in equity"; however, the clear weight of authority from other circuits supports a reading that so limits the Supreme Court's holding.  *See, e.g., Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 77 F.Supp.2d 199, 202-04 (D.Mass. 1999) (collecting cases and discussing in particular *United States ex rel. Rahman v. Oncology*

*Assoc. P.C.*, 198 F.3d 489 (4th Cir. 1999)).  This court is persuaded by these cases and holds that *Grupo Mexicano* does not remove a court's equitable power to issue a preliminary injunction in a contract claim where plaintiff seeks ancillary relief by the establishment of a lien or equitable interest.  Furthermore, the court agrees with Markel that the relief it seeks is based in equity to the extent that it seeks a judgment enforcing its right to be exonerated by defendants for fixed losses (e.g., claims made against it by suppliers and subcontractors but not yet paid), *see Doster v. Continental Cas. Co.*, 105 So.2d 83, 85-87 (Ala. 1958), and to the extent it invokes the remedy of *quia timet*, which, if granted, would protect its right to be exonerated by defendants for reasonably anticipated losses (e.g., expected claims by suppliers and subcontractors that have not yet been made) by the enjoining of certain actions by defendants, *see Alabama Bank & Trust Co. v. Garner*, 142 So.2d 568, 570 (Ala. 1932).  The court ascribes to the notion, expressed by defendants, that a mere sprinkling of equity into a complaint otherwise based at law cannot imbue a court with the equitable power of preliminary injunctive relief.  However, the complaint and the Second Coe Affidavit establish that equity provides a foundation for a meaningful portion of the relief sought

10

by Markel.  Therefore, the court does possess the power to grant the preliminary injunctive relief Markel requests.

The court now turns to the question of whether it should, in this case, exercise the power it has.  Under Eleventh Circuit law, a party seeking a preliminary injunction must clearly establish, among other prerequisites, that there is a substantial likelihood that it will prevail on the merits.  *See Northeastern Florida Chapter v. Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990).  At this stage of the proceedings, defendants have presented a coherent argument for the relevancy of alleged facts, outside of those relied on by Markel, to a final summation of liabilities between the parties.  Furthermore, defendants have buttressed their version of the facts with evidence.  While their argument that the defaults were legally and factually caused by Markel and Bole may not necessarily be a winning argument, it is plausible enough that the court cannot say that Markel has carried its burden of showing a substantial likelihood of winning on the merits.  Therefore, Markel's request for preliminary injunctive relief is due to be denied.  The court will not be disappointed or surprised if Markel takes an appeal from the denial of its application for preliminary injunctive relief.

## CONCLUSION

A separate and appropriate order will be entered.

DONE this _3rd_ day of April, 2001.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE