```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                    SOUTHERN DIVISION
```

MARKEL INSURANCE COMPANY,         }
                                  }
    Plaintiff, and Counter-   }
    Claim Defendant,          }   CIVIL ACTION NO.
                                  }
v.                                }   00-AR-2604-S
                                  }
THE DUNCAN COMPANY, INC., et      }
al.,                              }
                                  }
    Defendants, Counter-      }
    Claimants and Third-      }
    Party Plaintiffs,         }
                                  }
v.                                }
                                  }
TOM BOLE, et al.,                 }
                                  }
    Third-Party Defendants.   }

FILED 02 AUG 13 PM 3:24 U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED AUG 13 2002

### MEMORANDUM OPINION

    This case began with the filing of a complaint by Markel Insurance Company ("Markel") against The Duncan Company, Inc., John R. Duncan, and Carol O. Duncan ("the Duncans"). The requisites of diversity jurisdiction were alleged and are conceded. It appears, however, that there is no corporation by the name of The Duncan Company, Inc. John R. Duncan simply did business as The Duncan Company. The court will join the parties in ignoring this non-entity except as the name that John R. Duncan used as sole proprietor.

    Markel alleged that it, as surety, joined The Duncan Company in executing performance and payments bonds with respect to construction projects being undertaken by The Duncan Company.



Markel further alleged that it had been called upon by the bond beneficiaries because, according to the beneficiaries, who are owners and subcontractors, The Duncan Company failed to perform its contracts and failed to pay its bills. Markel sued the Duncans as indemnitors on the bonds. The Duncans filed an answer to Markel's complaint, a counterclaim against Markel, and a third-party complaint against an independent bonding agent, Tom Bole, d/b/a Surety Associates ("Bole"), seeking a money judgment, including punitive damages, against Bole on state law theories of breach of fiduciary duty, breach of contract, suppression of material fact, conspiracy, and fraud. The third-party complaint avers no facts forming an independent basis for federal jurisdiction.

After considerable and contentious discovery, Markel reached a settlement with the Duncans, and this court approved it. In the settlement document, the Duncans purported to retain their claims against Bole. The order that dismissed Markel's action against the Duncans and the Duncans' counterclaim against Markel does not reflect the amount of money, if any, paid by the Duncans to Markel, or the amount of money, if any, paid by Markel to the Duncans. For aught appearing, the Duncans received money, although the court guesses otherwise. Bole neither participated in, nor acquiesced in, this settlement.

The court is now presented with a motion for summary judgment by Bole seeking a dismissal of the Duncans' third-party action.

After reviewing the opposing briefs, the court set the matter for oral argument. As a result of what was said during oral argument, the court granted Bole fourteen days within which to supplement his brief, and the Duncans seven days within which to respond. Bole met his deadline; the Duncans did not — probably because they anticipated this court's decision and reasoned that they could do nothing about it, or because a dismissal without prejudice sounded good to them.

It is understandable that Bole does not want a dismissal of the third-party action against him for want of jurisdiction. If this court had jurisdiction, Bole would, in all likelihood, prevail on the merits. But, because this court does not have jurisdiction, it must dismiss the third-party action without prejudice. Except for what the court will say in reaching its conclusion that it is without subject matter jurisdiction, this court's remarks will be *dicta*. It may be hard, however, to distinguish between a holding and a *dictum*.

## Rule 14

Rule 14, F.R.Civ.P., is the rule that provides the only procedure by which a defendant can seek to "lay off" on a third-party whatever legal responsibility the defendant may have to the original plaintiff. In pertinent part, it provides:

> [A] defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person

> not a party to the action **who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.**

Rule 14, F.R.Civ.P. (emphasis supplied). Rule 14, of course, speaks for itself, but its meaning is made even plainer by Professor Moore, who further explains:

> [i]t bears repeating that impleader is available only for the assertion of **derivative** claims or "claims over" against the third party. **It does not permit joinder of a new party for the assertion of any other claims, even transactionally related claims.**

14 James Wm. Moore, et al., Moore's Federal Practice §14.03[1] (3d ed. 2001)(emphasis supplied).

Expanding upon the meaning of Rule 14, Professor Moore further says:

> The liability of the third-party defendant to the party that impleaded it must be for losses sustained by that party as a *result of plaintiff's claim*; **unrelated liability to the defendant is not a basis for impleader**.

Id. § 14.04[2] (italicized emphasis in original; second emphasis supplied).

The claims that the Duncans make against Bole are only marginally connected to the claims made by Markel against them. For instance, the Duncans are suing Bole for punitive damages in tort. The mere fact that the Duncans could utilize a recovery of exemplary damages to satisfy an obligation they may have to Markel does not bring their third-party claims within the embrace of Rule 14. As the Duncans describe their causes of action against Bole,

4

they do not depend upon the viability of Markel's claims against them. The Duncans could and should have filed a totally separate and independent suit against Bole in a court of competent jurisdiction. Their claims against Bole, therefore, are not "derivative." They do not depend upon any legitimate theory of indemnity or "liability-over". Thus, because there is no justification for proceeding under Rule 14, the would-be third-party complaint cannot be maintained. Although the misuse by the Duncans of Rule 14 constitutes a fatal jurisdictional defect upon which a dismissal without prejudice can be based, there are at least two other, more insurmountable, jurisdictional obstacles in the path of the Duncans.

### The Effect of the Settlement

As explained already, Rule 14 can be invoked only if a defendant has a viable theory that transforms the proposed third-party into what is, in effect, an "insurer" against whatever liability the defendant may have to the original plaintiff. The hoped-for insurer, Bole in this case, theoretically stood in the shoes of the Duncans *vis-a-vis* Markel and enjoyed all of the defenses that the Duncans may have had against Markel's claim. When the Duncans and Markel settled without Bole's consent, the Duncans either created a serious "due process" problem, or implicitly released Bole.

The court again looks to <u>Moore's Federal Practice</u> for a clear expression of the principle applicable in these circumstances:

> [i]f the third-party defendant has no opportunity to contest the determinations made in the underlying action — as for example, in when the plaintiff and defendant enter a consent judgment — the third-party defendant should not be bound.

<u>Id</u>. § 14.25. Although Professor Moore does not discuss the "due process" implications of ignoring a party who is necessary to an adjudication, the "due process" shortcoming in taking such a shortcut is obvious. It would simply not be fair for a defendant to "lay off" his own liability upon an unsuspecting and non-participating third-party without affording him an opportunity to defend on the merits.

Again, using the analogy of the "insurer", an insured cannot call upon his insurance company to provide him a defense and to pay any tort liability ultimately incurred by him and then, with impunity, to settle behind the insurer's back. This proposition is explained by Judge Posner:

> [i]f in the course of litigation, the covered claims fall out of the case **through settlement** or otherwise, **the insurer's duty to defend his insured ceases**.

<u>Lockwood International, B.V. v. Volm Bag Co., Inc.</u>, 273 F.3d 741, 744 (7th Cir. 2001) (emphasis supplied). Ostensibly, Bole, here the "insurer" if a Rule 14 third-party claim exists, could have defended by defending the Duncans, his "insureds." That opportunity was denied him when the Duncans settled without

6

consulting him. The attempt by the Duncans to "retain" their claims against Bole is so inconsistent with their settlement with Markel as to be totally ineffectual. One cannot "retain" what one has given up.

### Subject Matter Jurisdiction

If this court had jurisdiction over the purported third-party action, Bole would probably have been able to persuade the court to grant his motion for summary judgment on non-jurisdictional grounds, but the court must dismiss the third-party action against Bole for a reason not raised by Bole, and, in fact, opposed by Bole — namely, a lack of subject matter jurisdiction.

A defendant cannot confer subject matter jurisdiction on the court by consent or waiver. Federal courts are courts of limited jurisdiction. They cannot operate without subject matter jurisdiction. Subject matter jurisdiction is just as necessary for a third-party who invokes Rule 14 as it is for an original complainant.

The Duncans present no federal question in their third-party complaint, and the citizenships of the Duncans and Bole are not diverse. This may explain why there are no jurisdictional averments in the third-party complaint. The Duncans may have simply assumed that this court would take jurisdiction because of the court's admitted diversity jurisdiction over the original

complaint. If the Duncans were operating on that assumption, they should have at least tried to invoke and to trigger the supplemental jurisdiction of the court. Instead, it is Bole, smelling victory on the merits, who argues that this court should take supplemental jurisdiction. Supplemental jurisdiction, under limited circumstances, is recognized in 28 U.S.C. § 1367. Section 1367(a) provides for ancillary jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367 (1993). This court has already found that the claims of the Duncans against Bole are not "part of the same case or controversy" described in Markel's original complaint.

Even if the third-party complaint can be considered to be "part of the same case or controversy" presented by Markel, this court, in an exercise of its discretion, respectfully declines ancillary jurisdiction, because it earlier dismissed the original claim. This is precisely what is called for by 28 U.S.C. § 1367(c)(3), which states:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if —
>
> * * *
>
> (3) The district court has dismissed all claims over which it has original jurisdiction.

8

**Tolling?**

Because Bole worries mightily about the possibility that the Duncans will refile their complaint in the state court if this court dismisses the action without prejudice, this court cannot resist offering what is clearly a *dictum*. The court assumes that Bole is concerned about 28 U.S.C. § 1367(d)(2), in which Congress purports to toll a state's statutes of limitations under circumstances like these.

In *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 122 S. Ct. 999 (2002), the Supreme Court of the United States recognized that there are Constitutional problems inherent in the purported tolling provision of § 1367(d)(2). In *Raygor*, the Court did not try to anticipate the questions that will surely be presented to an Alabama court if the Duncans should refile. The Court did not stray from the limited question it had before it. But, after *Raygor*, the Supreme Court of South Carolina in *Jinks v. Richland County*, 563 S.E.2d 104 (S.C. 2002), firmly rejected the Congressional attempt in § 1367(d)(2) to toll a sovereign state's statute of limitations while a claim was getting nowhere in a federal court. Although it was easier to predict the Supreme Court of South Carolina than it is to predict the Supreme Court of Alabama or the Supreme Court of the United States, this court bravely predicts that both of the latter two courts will, when presented with the tolling question, agree with the Supreme Court

9

of South Carolina that § 1367(d)(2) violates state sovereignty, although, in doing so, they will not sound as much like John C. Calhoun as the Supreme Court of South Carolina did.

### Conclusion

Lacking subject matter jurisdiction, the court has no alternative but to dismiss the third-party action of the Duncans without prejudice. An appropriate order doing just that will be separately entered.

DONE this 13th day of August, 2002.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE